J-A13011-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| JORY AND JOEANNA RAND, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN J. YOUNG, AN ADULT INDIVIDUAL & CHARLES J. YOUNG, AND CAROLYN G. YOUNG, HUSBAND AND WIFE, & BRANDON T. COLELLA CONSTRUCTION, INC., A PENNSYLVANIA CORPORATION, & WIN REALTY ADVISORS, LLC., A PENNSYLVANIA LIMITED LIABILITY COMPANY, F/K/A WIN REALTY PA, LLC. | : | No. 1375 WDA 2017 |
| | : | |
| v. | : | |
| | : | |
| BARRISTERS LAND ABSTRACT CO., A PENNSYLVANIA CLOSE CORPORATION, & CAPITAL REGION LAND TRANSFER, INC., A PENNSYLVANIA CORPORATION D/B/A/ BARRISTERS LAND ABSTRACT COMPANY | : | |
| | : | |
| APPEAL OF: BRIAN J. YOUNG | : | |

Appeal from the Judgment Entered August 29, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD 13-007617

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    FILED JULY 13, 2018

Appellant, Brian J. Young, appeals from the judgment entered on August 29, 2017 in favor of Jory and Joeanna Rand (the Rands). We affirm.

We briefly summarize the facts and procedural history of this case as follows. Appellant, a licensed real estate agent, is in the business of purchasing older homes, remodeling them, and selling them for a profit. In 2010, Appellant purchased a 100-year-old, three-story home with a detached garage in the Southside area of Pittsburgh, Pennsylvania. Appellant hired Brandon T. Colella as the contractor in charge of renovations for the project. To create a more open floor plan on the main floor, Appellant directed Colella to remove a load-bearing wall and replace it with support beams and columns. The Rands purchased the remodeled house in August 2012. In December 2012, the roof leaked. The Rands replaced the roof in January 2013 and soon thereafter noticed the floors in the house were sinking. An inspection revealed that Appellant had not followed his engineer's directives to secure a basement column to the ground. The Rands spent approximately $70,000.00 to remediate the overall damage.

In April 2013, the Rands sued Appellant, Appellant's parents, Colella, and Win Realty, Appellant's real estate company.[1] In September 2014, Appellant filed a praecipe for a writ to join Barristers Land Abstract Co., the

_____

[1] Prior to trial, Appellant's parents were dismissed from the case. Colella settled with the Rands prior to trial for $50,000.00. Appellant's parents and Colella are not parties to this appeal.

settlement agent for the real estate transaction, as an additional defendant.[2]

The trial court held a four-day bench trial commencing on May 1, 2017. On May 9, 2017, the trial court issued a verdict in favor of the Rands in the amount of $35,764.35. More specifically, the trial court determined that Appellant and Win Realty were jointly responsible for one-third of the verdict, Barristers Land Abstract Co. owed one-third of the verdict, and Appellant solely owed one-third of the verdict for violating the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1. All of the parties filed post-trial motions. The trial court granted the Rands' request for counsel fees and expenses under the UTPCPL totaling $12,286.54, as well as delay damages of $3,161.57. The trial court denied all other requests for post-trial relief. The trial court entered judgment on August 29, 2017. This timely appeal resulted.[3, 4]

On appeal, Appellant presents the following issues for our review:

1. Whether the trial court's decision that [Appellant] violated the provisions of the Real Estate Seller Disclosure Law ("RESDL") by failing to disclose alleged defects of which [Appellant] either had no knowledge of or which he reasonably assumed had been

_____

[2] Barristers Land Abstract Co. is not a party to this appeal.

[3] Appellant filed a notice of appeal on September 22, 2017. On September 26, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on October 16, 2017. On December 15, 2017, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

[4] This appeal was filed on behalf of Appellant only. Win Realty is not a party to this appeal.

corrected is not supported by substantial evidence or [is] erroneous as a matter of law[?]

2. Whether the trial court's decision that [Appellant] allegedly engaged in fraudulent or deceptive conduct thereby violating the [UTPCPL]] is not supported by substantial evidence or [is] erroneous as a matter of law?

3. Whether the trial court's decision calculating the amount of the Rands' damages is not based upon substantial credible evidence and includes work that was not causally related to the alleged property defect?

Appellant's Brief at 3-4.

We briefly summarize Appellant's issues as follows. In his first two issues, Appellant challenges the trial court's findings that he knew that remodeling work was not completed or performed correctly and proper permits and final inspections were not obtained in violation the RESDL and UTPCPL. Id. at 13-14, 22-24. Appellant contends that he reasonably relied upon Colella, as his contractor, to obtain permits, perform all the necessary work, and complete a final inspection. Id. at 16-17, 23-24. As such, Appellant avers he was "without knowledge that the alleged material defects existed or had not been corrected by Colella when he filled out the [d]isclosure [s]tatement, or at any time thereafter up to the closing." Id. at 17; see also id. at 23. In his third issue presented, Appellant argues that the trial court miscalculated the damages awarded to Rands.[5] Id. at 24-27.

_____

[5] More specifically, Appellant avers the trial court erred in accepting the Rands' bill for remediation, because "[t]hat bill was a lump sum amount, and did not itemize the amount the labor or material costs for any aspect of the unspecified work." Appellant's Brief at 25. Appellant further claims that "[t]he

Our standard of review in non-jury cases is limited to:

a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

Additionally, this Court has stated that we will respect a trial court's findings with regard to the credibility and weight of the

_____

Rands changed the flooring from hardwood to bamboo because they liked it better than the original" not because they corrected structural defects as alleged. Id. at 26. He also contends that the trial court's award was subject "to [an] offset for [a] $30,000[.00] gain the Rands made on the [subsequent] sale of the property and [for] the $50,000[.00] settlement from Colella." Id. at 26. Finally, Appellant claims that the Rands also rented the home for a year prior to selling it and "[t]he amounts [the] Rands received in rent for the property should further reduce their claim of loss." Id. at 27.

However, upon review of the certified record, Appellant failed to raise these contentions in his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Our Supreme Court has stated:

Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court sua sponte[.]

Commonwealth v. Hill, 16 A.3d 484, 494 (Pa. 2011). Accordingly, we deem Appellant's third issue waived.

evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

Gutteridge v. J3 Energy Group, Inc., 165 A.3d 908, 914 (Pa. Super. 2017) (internal citations and quotations omitted).

We have previously determined:

The RESDL, 68 Pa.C.S.A. § 7301 et seq., provides that "Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form)." 68 Pa.C.S.A. § 7303. The RESDL further provides, in pertinent part, "If information disclosed in accordance with this chapter is subsequently rendered inaccurate prior to final settlement as a result of any act, occurrence or agreement subsequent to the delivery of the required disclosures, the seller shall notify the buyer of the inaccuracy." 68 Pa.C.S.A. § 7307.

The seller is not obligated by this chapter to make any specific investigation or inquiry in an effort to complete the property disclosure statement. In completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect. 68 Pa.C.S.A. § 7308. "A seller shall not be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if: (1) the seller had no knowledge of the error, inaccuracy or omission...." 68 Pa.C.S.A. § 7309(a)(1).

Growall v. Maietta, 931 A.2d 667, 672 (Pa. Super. 2007)(footnote omitted).

Regarding the UTPCPL, we have held:

the UTPCPL has the purpose of protecting the public from unfair or deceptive business practices and provides for a private right of action. The right to pursue an action is as follows:

Any person who purchases or leases goods or services primarily for personal, family or household purposes

and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201–9.2 (footnote omitted). The unlawful practices noted above include the UTPCPL's "catchall" provision in 73 P.S. § 201–2(4)(xxi), [which] provides liability for fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

We note that deceptive conduct ordinarily can only take one of two forms, either fraudulent or negligent. ... The pre-1996 catchall provision covered only fraudulently deceptive practices. The broadening of the UTPCPL ... makes negligent deception, e.g., negligent misrepresentations, actionable under the post-1996 catchall provision.

Kirwin v. Sussman Automotive, 149 A.3d 333, 336 (Pa. Super. 2016) (original brackets and some citations and quotations omitted).

Here, the trial court determined that, prior to the sale to the Rands, "[Appellant] was present for the August 30, 2011 inspection that exposed him to a support column in the center of the basement that was not secured to the floor." Trial Court Opinion, 12/15/2017, at 5 (record citation omitted). "The inspection report actually contain[ed] a photograph showing the inspector pushing the unsecured column with his foot along the floor." Id. at 5-6. Thus, the trial court determined that, "[s]ince [Appellant] was present for the inspection and was provided the report showing movement in the column, he knew of a past problem with a structural component but failed to disclose it." Id. at 6. Hence, the trial court determined that when Appellant subsequently executed the disclosure statement, he was misleading when he

stated that he was unaware of past structural problems with the home. Id. at 7. Likewise, the trial court concluded that, "it was not reasonable for [Appellant] to believe that [] Colella corrected the structural defect" when the home inspection set forth that "Colella's work appeared to be done by 'an unqualified person' and was below local building standards[.]" Id. The trial court also concluded that Appellant knew he had to obtain an occupancy permit for a newly erected garage, but he failed to do so and then misled the Rands about his knowledge of building code violations. Id. at 8.

We have reviewed the certified record, the parties' briefs, the relevant law, and the trial court's opinion entered on December 15, 2017. In this case, the trial court determined that Appellant knew there were structural problems with the subject property and that occupancy permits were required but not obtained. The trial court concluded that Appellant failed to disclose these deficiencies to the Rands as required under both the RESDL and UTPCPL and the Rands suffered subsequent damage. Moreover, the trial court recognized that it was unreasonable for Appellant to believe that Colella corrected the known structural problems, because Appellant knew Colella's overall construction skill fell below local building standards, well in advance of closing with the Rands. Based upon our review of the record, we discern no abuse of discretion or error of law. Because the December 15, 2017 opinion meticulously, thoroughly, and accurately disposes of Appellant's issues on appeal, we affirm it and adopt it as our own. Accordingly, we direct the parties

to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/13/2018

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

JORY AND JOEANNA RAND,
Husband and Wife,

      Plaintiff,

      vs.

BRIAN J. YOUNG, An adult individual,
and WIN REALTY ADVISORS, LLC, a
Pennsylvania limited liability company,
f/k/a Win Realty PA, LLC,

      Defendants.

      vs.

BARRISTERS LAND ABSTRACT
CO., a Pennsylvania Close
Corporation and CAPITAL REGION
LAND TRANSFER, INC., a Pennsylvania
Corporation d/b/a BARRRISTERS
LAND ABSTRACT COMPANY,

      Additional Defendants.

CASE NO. GD 13-7617
Superior Court docket nos. 1375 WDA
2017, 1402 WDA 2017 and 1407 WDA
2017

**OPINION**

JUDGE ALAN HERTZBERG

COPIES SENT TO:

RYAN JAMES, ESQUIRE
JAMES LAW, LLC
1514 LINCOLN WAY, SUITES 301-302
WHITE OAK, PA 15131

DEBORAH R. ERBSTEIN, ESQUIRE
437 GRANT STREET
1806 FRICK BUILDING
PITTSBURGH, PA 15219

CHARLES C. BELL, ESQUIRE
DORNISH LAW OFFICES, PC
1207 FIFTH AVENUE, SUITE 300
PITTSBURGH, PA 15219

CLIFFORD TUTTLE, JR., ESQUIRE
PO BOX 24530
PITTSBURGH, PA 15234

JORY AND JOEANNA RAND,
Husband and Wife,

      Plaintiff,

      vs.

BRIAN J. YOUNG, An adult individual,
and WIN REALTY ADVISORS, LLC, a
Pennsylvania limited liability company,
f/k/a Win Realty PA, LLC,

      Defendants.

      vs.

BARRISTERS LAND ABSTRACT
CO., A Pennsylvania Close
Corporation And CAPITAL REGION
LAND TRANSFER, INC., a Pennsylvania
Corporation d/b/a BARRRISTERS
LAND ABSTRACT COMPANY,
      Additional Defendants.

CASE NO. GD 13-7617
Superior Court docket nos. 1375 WDA
2017, 1402 WDA 2017 and 1407 WDA
2017

## OPINION

Alan Hertzberg, Judge                        Date Filed: December 15, 2017

### I. Background

After graduating from Boston College and working in sales for a sportswear company, defendant Brian Young purchased a home in Pittsburgh. He had a contractor make some updates to it and placed it for sale with his mother, a real estate agent. It sold quickly, and Mr. Young said it was a successful project. He then decided to change careers and became a full time "real estate investor." Mr. Young's investments, however, are exclusively what is commonly called "house flipping" in which he will "buy cheap, rehab and sell for a profit ...." Transcript of Non-Jury Trial ("T." hereafter), p. 18. Mr.

1

Young's next project was the purchase of a home in Dormont Borough for $30,000 that he also said went well. He then purchased and quickly sold two more homes in Dormont. All three Dormont projects were minor renovations involving updating esthetics, with Brandon Colella serving as the contractor in charge of the renovations.

As Mr. Young was "flipping" the three homes in Dormont, he determined he could make a larger profit if he saved on sales commissions by becoming a licensed real estate agent. In 2009 Mr. Young took the required courses, passed the examination, and in March of 2010, became a licensed real estate agent. Mr. Young then turned his attention to the Southside of Pittsburgh and purchased a home on Fox Way that "was a gut job. [Brandon Colella] gutted the property and rewired it, replumbed it, installed new drywall, new floors, new kitchen. It was more extensive than the Dormont properties." T., p. 615. It also sold quickly, and Mr. Young said there were no complaints.

In the fall of 2010 Mr. Young purchased a three story home with a detached garage on the Southside of Pittsburgh known as 2315 Jane Street. The home was built over one hundred years ago, and Mr. Young purchased it for $152,000. Brandon Colella recommended that Mr. Young completely gut 2315 Jane Street, but Mr. Young instead decided to save money by limiting renovations to those that created a more attractive appearance, such as an "open concept" first floor. In October of 2011 Mr. Young listed the home for sale for over $400,000 with his broker, Win Realty Advisors. This broker catered to agent/investors with a commission split of 70-30 in favor of the agent and agents permitted to engage exclusively in transactions involving themselves as purchaser or seller. 2315 Jane, however, did not sell quickly at that price, hence Mr. Young reduced the price.

2

outgrown the townhouse they occupied on the Southside. They were interested in finding another home on the Southside that was larger, had a garage and yard and needed minimal renovations. They found 2315 Jane Street had everything they were looking for and purchased it from Mr. Young for $315,000 on August 30, 2012.

On December 24, 2012, during a rain storm, water poured into the home from a leak in the roof. Early in January the Rands had a contractor named Tennis Roofing install a new roof. In creating the "open concept," a load-bearing wall that ran from the front to the rear of the home was removed and replaced with columns and beams. Almost immediately after the roof replacement the Rands began to feel "that the house was changing, the floors were sinking" (T., p. 529) and they saw cracks in the drywall that covered the mid-span support column on the first floor. It turned out the directive from the engineer who designed the columns and beams to "assure continuous load path to the footing in the basement" (T., p. 354) was not followed. The Rands then had to spend $70,126 to replace the system of beams and columns Mr. Young had installed and to repair other impacted components of the home.

In April of 2013 the Rands sued Mr. Young, Mr. Colella and Win Realty[1]. In September of 2014 Mr. Young filed a praecipe for a writ to join Barristers Land Abstract Co., the settlement agent that closed the real estate transaction, as an additional defendant. Prior to trial Mr. Colella reached a settlement with the Rands, and this Court excused him from further participation in the litigation. The dispute was assigned to me for disposition via non-jury trial, which was held on May 1, 2, 3 and 4, 2017. On May 9,

---

[1] The Rands also sued Mr. Young's parents, who signed the deed, but they were dismissed from the case before trial.

3

jointly by Mr. Young and Win Realty, $11,921.45 owed by Barristers Land Abstract and an additional $11,921.45 owed only by Mr. Young for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL" hereafter). See 73 P.S. §201-1 et seq.

The Rands filed the first post-trial motions, requesting clarification of the award of damages, counsel fees and expenses of $53,419.30 under the UTPCPL and delay damages under Pennsylvania Rule of Civil Procedure no. 238. All the other parties then also filed post-trial motions, alleging I committed a multiplicity of errors in my verdict. I awarded the Rands counsel fees and expenses of $12,286.54 and delay damages of $3,161.57 but denied all other post-trial motions. Judgment was entered and appeals taken to the Superior Court of Pennsylvania by Mr. Young, Win Realty and Barristers. Each filed a concise statement of errors complained of on appeal. See Pennsylvania Rule of Appellate Procedure no. 1925. The balance of this opinion will address each error identified in the concise statements.

## II. Errors Claimed by Mr. Young

In paragraph 1 of Mr. Young's concise statement, he contends my "Non-Jury Verdict and Verdict Explanation is uncertain and ambiguous...." The first parties that registered a problem with my verdict and explanation were the Rands in their post-trial motion request for "clarification" of the award of damages. Mr. Young, Win Realty and Barristers also then raised this issue in their post-trial motions as well as in Mr. Young's and Barristers' concise statements. The Rands alleged a conflict existed between the verdict amounts of $11,921.45 against defendants Young and Win Realty and $11,921.45 against additional defendant Barristers because my explanation stated that these

4

amount "split equally between the remaining Defendants and the Additional Defendants." Because the defendants and additional defendants are comprised of three parties, the Rands construed the "split equally" language to call for division of the $23,842.90 equally among each of the three parties. However, that was definitely not what I intended in the verdict. I determined Win Realty was vicariously liable for Mr. Young's conduct, hence Win Realty could only be jointly liable with Mr. Young. On August 18, 2017 I attempted to clarify that the explanation "was intended to inform the parties that the amount of $23,842.90 was split equally between two groups, the Defendants and the Additional Defendants, with each group thus being responsible for an equal amount (the Defendants are responsible for $11,921.45 and the Additional Defendants are responsible for $11,921.45)." Apparently, this clarification is acceptable to the Rands and Win Realty but not acceptable to Mr. Young and Barristers. With several factors that made the verdict complicated (e.g., behavior attributable to a settling defendant and enhanced damages under the UTPCPL applicable to only one defendant), I hoped my "Verdict Explanation" would assist the parties in understanding the verdict. I apologize if the parties were not assisted, but am unaware of any authority for this constituting reversible error.

In paragraph 2 of Mr. Young's concise statement, he contends I made an error by finding Mr. Young failed to disclose material defects because there was no evidence he knew or should have known of the defects. Mr. Young, however, took the unusual step of having a home inspection done before he listed 2315 Jane Street for sale. Mr. Young was present for the August 30, 2011 inspection that exposed him to a support column in the center of the basement that was not secured to the floor. See T., pp. 116-120. The

5

unsecured column with his foot along the floor. See Exhibit 29, p. 15. Under the headings "Summary of Areas Requiring Further Evaluation" and "General Information," the report also states:

> Amateur work-It appears that non professional or an unqualified person or persons attempted to perform repairs. The work is not to the typical building standards of the area. Repairs will generally be more expensive because of the amateur work.

Mr. Young did not disclose this inspection report to the Rands before they purchased 2315 Jane Street, and he did not voluntarily provide it to them when they requested it during discovery in this proceeding.

Pennsylvania's Real Estate Seller Disclosure Law required Mr. Young to include "Structural problems" (68 P.S. §7304 (b)(6)) in the Property Disclosure Statement provided to the Rands, but Mr. Young's disclosure statement answered "No" to the question "Are you aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components." Exhibit 15, ¶ no. 6(b). Since Mr. Young was present for the inspection and was provided the report showing movement in the column, he knew of a past problem with a structural component but failed to disclose it. Hence, there was evidence Mr. Young knew of the defect and my determination that he failed to disclose it was correct.

Mr. Young testified Brian Colella told him he would repair all the problems in the inspection report, hence Mr. Young argues he is not liable for the omission in the property disclosure statement because the "omission was based on a reasonable belief that a material defect...had been corrected ...." 68 P.S. §7309 (a)(2). This provision cannot be applicable to a seller's disclosure of a past defect because it would allow a

6

provision applies when a seller denies a defect currently exists because the seller reasonably believes it was corrected. Because Mr. Young's omission concerned the existence of a structural defect in the past, 68 P.S. §7309(a)(2) is not applicable.

Even if 68 P.S. §7309(a)(2) were applicable, it was not reasonable for Mr. Young to believe Brian Colella corrected the structural defect. The purchaser of the Fox Way home testified that Mr. Young was notified that Brian Colella failed to make repairs Mr. Young had assigned to him in the summer of 2011. T, pp. 703-710. Also, with Mr. Young's home inspector saying Brian Colella's work appeared to be done by "an unqualified person" and was below local building standards, it is not reasonable to expect he could correct the structural defect. Therefore Mr. Young did not have a "reasonable belief" that Brian Colella corrected the structural defect.

In paragraphs 3 and 11 of Mr. Young's concise statement, he contends I made an error by finding he violated the UTPCPL. The sale of residential property is subject to the UTPCPL (see Gabriel v. O'Hara, 368 Pa. Super. 383, 534 A.2d 488 (1977)), and misleading conduct by a seller is a violation of the "catchall provision" of the UPTCPL. See Bennett v. A.T. Masterpiece Homes v. Broadsprings, LLC, 2012 PA Super 60, 40 A.3d 145 and 73 P.S. §201-2(4)(xxi). The statement in the written disclosure provided to the Rands that Mr. Young was unaware of a past structural problem was misleading conduct. In addition, a City Building Inspector informed Mr. Young he needed to obtain an occupancy permit because the old garage had been demolished and a new one erected without fire-rated drywall. See T., pp. 194-196 and 205. Mr. Young, however, failed to obtain the occupancy permit, which resulted in the City issuing a citation to the Rands for violating the Building Code. The property disclosure statement mislead the Rands about

7

was unaware of violations of local laws or building ordinances. Exhibit 15, ¶ nos. 7, 19(c) and 19(d). Since Mr. Young mislead the Rands about the structural problem and the lack of an occupancy permit for the new garage, my finding that he violated the UTPCPL was correct.

In paragraphs 4, 5, 6 and 8 of Mr. Young's concise statement, he contends I erroneously found him liable for repairs to items identified as defects in the Rands' home inspection. There is no merit to this contention because I held Mr. Young liable exclusively for repair costs related to the structural problem and other impacted components of the home, such as the floor and drywall. In the Verdict Explanation, I began my calculation of damages with $70, 126.18, which is the total of the invoices admitted into evidence that relate to repair of the structural problem and other impacted components of the home.[2] I then reduced the damages by $46,283.28 for sixty-six percent of the behavior attributable to the settling defendant, to $23,842.90. The joint verdict against Mr. Young and Win Realty was for half of that amount, $11,921.45, with another $11,921.45 against Mr. Young alone for violating the UTPCPL. Since all damages against Mr. Young are from the cost of repairs necessary to resolve the structural defects, he was not found liable for the repair of defects identified in the Rands' home inspection. Hence, I did not make the error claimed by Mr. Young.

In paragraph 7 of Mr. Young's concise statement, he contends I erroneously held him liable for structural problems that were not visible to him prior to closing and that did not occur until after the closing. However, Mr. Young was present for the inspection of

---

[2] See, in exhibits 38, 39 and 40, NYCE INC invoices for $2,000, $54,474, $5,378, $1,200, Roy Kim, Jr., P.E. invoices for $700, $600, $1,600 and $600 and Lumber Liquidators invoice for $3,574.18 for a total of $70,126.18.

8

along the floor of the basement support column. See T., pp. 116-120. Hence, contrary to Mr. Young's contention, the structural problem was visible to him prior to closing. Relative to Mr. Young's claim that the structural problems did not occur until after closing, the credible, uncontradicted opinion of Roy Kim, Jr., P.E. was that multiple deviations from his design caused the structural problems. See T., pp. 327-334. Since these deviations occurred during the renovation overseen by Brandon Colella, they did not occur after the closing. Therefore, I did not make the errors alleged by Mr. Young.

In paragraph 9 of Mr. Young's concise statement, he contends I made an error because a provision in the Agreement of Sale releases him from liability. This provision, paragraph no. 25, states:

> Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other woodboring insects, radon, lead based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

Clearly, the provision does not release Mr. Young from liability if he violated any seller disclosure law. Since Mr. Young did violate Pennsylvania's Real Estate Seller Disclosure Law, I correctly determined that he was not released from liability.

In paragraph 10 of Mr. Young's concise statement, he contends I made an error because the Rands waived their claims of defects to 2315 Jane Street by signing condition

9

These documents do contain waivers, but none purport to waive unknown claims due to Mr. Young's concealment of defects. Instead, they indicate that the defects revealed by the Rands' home inspection have been repaired or they have waived their right to have them repaired, and with the release of escrow money, how the $15,000 escrowed at closing with Barristers due to unrepaired defects was to be disbursed. With the Rands not having waived unknown claims due to Mr. Young's concealment of defects, my decision was correct.

In paragraph 12 of Mr. Young's concise statement, he contends I erroneously failed "to determine whether Plaintiffs had a fee agreement with counsel, the amount of Plaintiffs' responsibility for paying their fees out-of-pocket, or whether there was a contingency recovery in total or in part for their attorney's fees." This contention is incorrect. The thirty-eight pages of detailed invoices provided to Mr. Young and I and the Rands' motion for attorneys' fees and costs contained the information I used to make the determinations Mr. Young alleges I did not make. These documents established that the Rands would pay their counsel at the rate of $175 per hour, that the Rands would pay their counsel no more than $30,000 in attorney fees and expenses (the invoices demonstrate receipt by counsel of $30,000 from the Rands), and that the amount over $30,000 ($53,419.30 was requested in the motion) would be contingent on an award from the court. Since I did determine the Rands' fee agreement with their counsel, there was no error in my attorney fee award.

In paragraph 13 of Mr. Young's concise statement, he contends I erroneously failed "to direct Plaintiffs to file of record invoices setting forth their counsel's professional services and time spent for each service performed, and the costs claimed,

10

appellate review." This contention is disingenuous because the invoices would have been offered into evidence if I held an evidentiary hearing. I provided Mr. Young with the opportunity for an evidentiary hearing, but he declined to have an evidentiary hearing. See 6/23/17 Order of Court ("all of counsel having agreed during a telephone conference call held yesterday that there will be no evidentiary hearing on Plaintiffs' Motion for Attorneys Fees and Costs....."). The fact that the thirty-eight pages of counsel's invoices were provided to Mr. Young and I but were not either offered into evidence at a hearing or attached to the Rands' Motion had no effect on the ability of Mr. Young and I to review them. Hence, there is no prejudice to Mr. Young and no impact on "review by the trial Court." Relative to Mr. Young's argument that the record is incomplete for appellate review, a document with counsel's hours and hourly rate submitted at the end of trial with counsel's assertion that the hourly rate was fair and reasonable was held by the Superior Court of Pennsylvania to be sufficient information for the trial court's determination of an attorney fee award under the UTPCPL. See Wallace v. Pastore, 1999 PA Super 297, 742 A.2d 1090 at 1094. Since I possessed more information than the trial judge in Wallace v. Pastore, I was correct in not requiring the Rands to file of record their attorney's invoices.

Mr. Young's final contention, set forth in paragraph 14 of his concise statement, is that I erroneously failed to consider the factors for assessing the reasonableness of Plaintiff's counsel fees set forth in Boehm v. Riversource Life Ins. Co. (2015 PA Super 120, 117 A.3d 308). The factors are:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3)

11

the clients from the services; and (4) The contingency or certainty of the compensation.

Id. at 335. Mr. Young, once again, makes an incorrect contention because I, in fact, considered these four factors in assessing the $12,286.54 counsel fee award. I determined attorney James spent more time than another attorney with more experience would have spent and allowed only 6.5 of the 276 hours he devoted to the dispute in 2013 and 2014. Most of the time I credited to attorney James thereafter involved his attendance at witness and party depositions and preparation for the lengthy trial, which either was not within his control or was reasonable. Attorney James charged $175 per hour, a rate Mr. Young did not complain about,[3] and that I believe is customary for similar services. I considered the approximately $109,000 the Rands spent repairing 2315 Jane Street and that attorney James' representation was successful in producing a $50,000 settlement from Brandon Colella plus a verdict of $35,764. In doing so, I awarded a smaller percentage of the counsel fees credited to attorney James before the Colella settlement, 17 percent (based on 6 defendants), than the 50 percent I awarded afterwards. I considered that payment for attorney James' services from September of 2015 to the May, 2017 trial was contingent on my award and not yet paid, but I still eliminated 25 of the 111 hours he spent during that time period because they were not necessary. Having considered the appropriate factors and awarding attorney James 23 percent of the fees and expenses he requested, my counsel fee award was reasonable and not erroneous.

---

[3] In fact, near the end of Mr. Young's answer to plaintiff's motion for post-trial relief, Mr. Young seems to indicate $175 per hour is lower than the customary charges, averring "that rate reflects the lack of experience of Plaintiffs' attorney in handling civil litigation matters."

12

## III. Errors Claimed by Win Realty

In paragraph 1 of Win Realty's concise statement, it contends I made an error by holding it vicariously liable for the misleading property disclosure statement prepared by Mr. Young. Win Realty admits that a broker is vicariously liable for the misleading conduct of its agent committed in the course of his or her employment. See Aiello v. Ed Saxe Real Estate, Inc., 508 Pa. 553, 499 A.2d 282 (1985). But, Win Realty argues that preparation of the property disclosure statement was done by Mr. Young in his capacity as the seller, not as a real estate agent, therefore the misleading conduct was not committed in the course of his employment. However, Pennsylvania's Real Estate Seller Disclosure Law plainly establishes that a real estate agent is liable when he or she knows the property disclosure statement prepared by the seller is misleading. See 68 Pa. C.S. §§7308 and 7310. While Mr. Young acted in the capacity of seller and real estate agent, it would be impossible for his knowledge as a real estate agent to be different from his knowledge as the seller. Since real estate agent Young knew the property disclosure statement was misleading, I correctly found broker Win Realty vicariously liable.

In paragraph 2 of Win Realty's concise statement, it contends I made an error by finding it vicariously liable for Mr. Young's negligent remodeling activities. However, all remodeling activity was performed under the direction of Brandon Colella, and I found Win Realty was vicariously liable based on Mr. Young's knowledge that the property disclosure statement was misleading. Hence, there is no merit to this allegation of error.

In paragraphs 3, 4, 5, 6, 7, 8, 9 and 10 of Win Realty's concise statement, it makes the same contentions that I previously addressed under the errors claimed by Mr. Young.

13

In paragraph 1 of Barrister's concise statement, it contends my verdict was erroneous because there was no evidence that it owed a duty to Mr. Young or that it was negligent. While the Agreement of Sale between Mr. Young and the Rands places the obligation on Mr. Young to obtain an occupancy permit and/or zoning certificate, this obligation routinely is assumed by Barristers and its competitor title companies as part of the services title companies are paid to perform when serving as settlement agents in charge of closing a real estate transaction.[4] See T., pp. 612-617 and 654-655. In assuming this obligation, Barristers had a duty to Mr. Young to use reasonable care. See Pearson v. Central Nat. Bank of Philadelphia, 102 Pa. Super 111, 156 A. 560 (1931) (holding settlement agent liable to purchaser, who did not purchase title insurance, for delinquent water rents). The evidence of Barristers' negligence essentially was by admission of its vice president and general manager that it should have, but failed to notify Mr. Young or the Rands, when the zoning certificate provided to it by the City of Pittsburgh stated that no occupancy permit had been issued and the proposed use "is illegal." See T., pp. 671-680. Since there was undisputed evidence of a duty owed by Barristers to Mr. Young and Barristers' negligence, my verdict against Barristers was correct.

In paragraph 2.a. of Barristers' concise statement, it contends I erroneously imposed a contractual duty when it was not a party to the Property Disclosure Statement or the Agreement of Sale. However, Barristers admitted that it agreed to obtain the occupancy permit and zoning certification. Hence, Barristers had a contractual duty.

---

[4] The "HUD-1" Settlement Statement from the 8/30/12 closing shows Barristers charging $2,215 for title insurance, $175 for deed preparation and $15 for notary fees and being reimbursed $202.70 for lien letters, which included $100 Barristers advanced to the City of Pittsburgh for the zoning certificate.

14

liability under the terms and conditions of the Property Disclosure Statement and the Agreement of Sale. However, there is no statement in either document that releases the settlement agent from negligent conduct or breaching its agreement to provide settlement services. Therefore, Barristers was not released from liability.

In paragraph 2.c. of Barristers' concise statement, it contends "no evidence was presented at trial that Barristers was required to obtain an occupancy permit." To the contrary, there was uncontradicted evidence presented at trial that Barristers was required to obtain an occupancy permit.

In paragraph 2.d. of Barristers' concise statement, it contends there was no evidence that the lack of an occupancy permit adversely affected the title to the property. While this is true, liability was not premised on Barristers title insurance responsibility. Instead, Barristers liability was premised on performance of its settlement agent duties.

In paragraph 2.e. of Barristers' concise statement, it contends there was no evidence that lack of an occupancy permit resulted in any damage to Mr. Young or the Rands. To the contrary, the Rands credibly testified that they would not have closed on the purchase of 2315 Jane Street if Barristers had informed them there was no occupancy permit and their proposed use "is illegal." Hence, the damages sustained as a result of the purchase of the property would have been avoided had Barristers done its job properly. These damages include not only the $70,126.18 the Rands spent to repair the structural problem, but the additional amount they spent to remove the drywall in the garage and replace it with fire-rated drywall after being cited for violating the City Code.[5]

---

[5] The Rands paid for this work in the garage but were unable to locate an invoice that itemized the cost of material and labor for the garage.

15

alleged inconsistency in the Verdict and Verdict Explanation that I previously addressed under the errors claimed by Mr. Young.

In paragraph 4 of Barristers' concise statement, it contends I erroneously calculated damages by failing "to deduct set-offs from the gross amount claimed by the Plaintiffs." The only argument for deducting set-offs that was not addressed under the errors claimed by Mr. Young is that rent received and the higher sale price obtained when the Rands relocated to California should have been deducted from the calculation of damages. However, it would be improper to deduct either of these items for at least two reasons. First, receiving rent and appreciation in the value of real estate over time typically accrue to any purchaser of realty, and the Rands hoped for these benefits before they purchased the home. Second, if they could be deducted from the damages, numerous collateral issues would have become relevant (e.g., any offsetting cost of rent the Rands paid when they relocated, whether rent received was offset by the mortgage payment and other expenses and whether the cost of any new home purchased by the Rands exceeded the sale price obtained for 2315 Jane Street). Therefore, not deducting the rent received and higher sale price obtained was appropriate and not erroneous.

Barristers' final contention, set forth in paragraph 5 of its concise statement, is that my verdict was erroneous because the title insurance policy excludes claims relating to zoning and occupancy permits. Since Barristers' liability was not premised on the title insurance policy, my verdict was correct.

16